UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JASON CONGILARO and BETHANNE
CONGILARO

                                    Plaintiffs,

                  v.                                  5:09-CV-1452
                                                      (FJS/TWD)

CROWN EQUIPMENT CORPORATION,

                                    Defendant.
_____

**APPEARANCES**                               **OF COUNSEL**

**OFFICE OF ROBERT E. LAHM**        **ROBERT E. LAHM, ESQ.**
711 East Genesee Street
Syracuse, New York 13202
Attorneys for Plaintiffs

**GOLDBERG SEGALLA LLP**           **KENNETH M. ALWEIS, ESQ.**
5789 Widewaters Parkway               **LISA MARIE ROBINSON, ESQ.**
Syracuse, New York 13214
Attorneys for Defendant

**GOODELL, DEVRIES, LEECH &**      **THOMAS J. CULLEN, ESQ.**
**DANN, LLP**                                       **RENEE N. SEWCHAND, ESQ.**
One South Street
20th Floor
Baltimore, Maryland 21202
Attorneys for Defendant


**SCULLIN, Senior Judge**


**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

    Plaintiffs Jason Congilaro and Bethanne Congilaro bring this product liability action

against Defendant Crown Equipment Corporation due to a stand-up forklift accident that occurred on May 31, 2007, at a WalMart distribution center located in Marcy, New York.[1] Currently before the Court are Defendant's motion to exclude the testimony of Plaintiffs' proposed expert witnesses and Defendant's motion for summary judgment.

## II. BACKGROUND

Plaintiff Jason Congilaro alleges that, while he was operating a stand-up forklift that Defendant manufactured, model RR5225-45, he slid through a puddle of liquid on a WalMart warehouse floor and crashed into a firewall door, causing severe injury to his lower left leg as it was crushed between the door and the forklift. As a result of his injury, Plaintiff Jason Congilaro has undergone multiple surgeries and his left leg had to be amputated below the knee. Plaintiff Bethanne Congilaro, Plaintiff Jason Congilaro's wife, alleges, among other things, the loss of her husband's services and consortium resulting from the May 31, 2007 incident.

Plaintiffs contend that the "open-compartment design" of Defendant's stand-up forklift is unreasonably dangerous and defective because the compartment in which the forklift user stands to operate the forklift lacks a rear door enclosing the operator compartment. Plaintiffs assert that the addition of a rear door to the operator compartment as the forklift's standard design is a safer design alternative to the open-compartment design.

---

[1] Plaintiffs commenced this action on June 22, 2009, in New York Supreme Court, Onondaga County; and Defendant removed the action to this Court by filing a notice of removal dated December 30, 2009.

## III. DISCUSSION

A.   **Defendant's *Daubert* motion to exclude the expert testimony of Plaintiffs' two proposed expert witnesses**

In its *Daubert* motion, Defendant seeks to preclude Plaintiffs' proffered experts, Thomas A. Berry and John Coniglio, from testifying at trial concerning their opinions regarding a proposed safer alternative to the open-compartment design of Defendant's stand-up forklift on the ground that their opinions are unreliable, untested, and speculative. Plaintiffs' proposed expert witnesses maintain that the installation of a rear door enclosing the forklift's operator compartment would help to prevent injuries of the type that Plaintiff Jason Congilaro suffered. Berry and Coniglio further assert that forklift operators should be trained to remain inside the operator compartment during accidents. Defendant, on the other hand, contends that forklift operators have the best chance to avoid injury by quickly exiting the forklift and that the installation of a door fully enclosing operators within the operator compartments would only encumber their ability to exit safely.

Under New York law, "a 'defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use . . . .'" *Yun Tung Chow v. Reckitt & Colman, Inc.*, 17 N.Y.3d 29, 33 (2011) (quotation omitted). "If the 'utility' of a product 'does not outweigh the danger inherent in its introduction into the stream of commerce,' then the product is defectively designed . . . ." *Id.* (quotation omitted).

In assessing the reliability of expert testimony, Rule 702 of the Federal Rules of Evidence identifies certain "'indicia of reliability'" that a district court should consider, "'namely, (1) that

the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case.'" *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (quotation omitted). Furthermore, in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court enumerated a list of additional factors that a court should consider, including "(1) whether a theory or technique has been or can be tested;" "(2) 'whether the theory or technique has been subjected to peer review and publication;'" "(3) the technique's 'known or potential rate of error' and 'the existence and maintenance of standards controlling the technique's operation;'" and "(4) whether a particular technique or theory has gained general acceptance in the relevant scientific community." *Williams*, 506 F.3d at 160 (quoting *Daubert*, 509 U.S. at 593-94, 113 S. Ct. 2786). Although the *Daubert* threshold is not very stringent, courts nonetheless look to *Daubert* to ensure that expert testimony is based on sufficiently reliable knowledge and methodology.

In the instant case, Defendant certainly has support for its position that the operator compartment of its stand-up forklifts should remain unencumbered by a door enclosing the operator compartment as the standard design. However, this does not preclude Plaintiffs from presenting their theory of liability to a jury, aided by qualified experts, that a door guarding the opening at the rear of the operator compartment is a safer alternative to no door. Applying the *Daubert* factors to this case, first, Plaintiffs' experts' door theory has been tested. Second, it appears that Berry conducted a study on the history of stand-up forklift operator safety and published a peer-reviewed report, titled "A Risk Based Study of Tipover and Off-dock Accidents Involving Stand-up Lift Trucks." *See* Dkt. No. 43 at 7. Third and fourth, as is further discussed

below, although it has not gained general acceptance, the closed-operator-compartment-door theory is subject to dispute within the engineering community.

Plaintiffs' experts' proposed alternative design is not, as Defendant suggests, some untested and unreliable design. On the contrary: Defendant has designed, manufactured, and sold such doors to various customers for many years. Likewise, to the extent that Defendant is seeking to preclude Plaintiffs' proffered experts based on the supposed unreliability of their alternative design *theory* that a door is safer than no door, that theory is not uniformly disfavored.[2] Finally, courts have found Defendant Crown Equipment Corporation liable based on alternative design theories substantially similar to those asserted here. *See, e.g.*, *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028 (9th Cir. 2003) (affirming the injured forklift-operator plaintiff's compensatory and punitive damage jury award against Crown in a defective design case for not installing an operator-compartment door on its stand-up forklift). *Cf. Walden v. Crown Equip. Corp.*, 72 F. App'x 56 (5th Cir 2003) (affirming the lower court's admittance of expert testimony that it would have been safer to manufacture a forklift with an operator-compartment door under Arkansas law).

---

[2] For example, Ford Motor Company, a major Crown customer, requires a full height safety door on its stand-up rider forklifts. Moreover, many of the standards to which Defendant refers in support of its proposition that operator-compartment doors are either prohibited or at least disfavored in the relevant communities do not, in fact, mandate such a conclusion. The American National Standards Institute ("ANSI") provides only that operator-compartment doors may be provided; and, if provided, they shall permit easy ingress and egress from the operator console. Similarly, although Defendant cites to a military standard requiring military forklifts to "permit unobstructed egress from the rear of the truck," this standard is not applicable to forklifts that businesses and persons outside the military use. Defendant also cites to the Occupational Safety & Health Administration ("OSHA") and argues that, since OSHA has adopted the ANSI standard, OSHA effectively disfavors the use of doors on stand-up forklifts. Of course, since the ANSI standard does not prohibit doors, neither does OSHA.

With respect to Thomas A. Berry, the Court denies Defendant's *Daubert* motion to exclude because Berry is a qualified expert in mechanical engineering with significant experience in forklift design and forklift accidents of the type at issue in this case. Indeed, as one court has concluded,

> Mr. [Thomas A.] Berry meets the Fed. R. Evid. 702 and *Daubert* standards because his testimony is grounded on technical knowledge which may well be useful to the finder of fact. Mr. Berry is a qualified mechanical engineer with knowledge of the material handling industry, the standards applicable to forklifts, forklift accident reports, and forklift design history. Whether an alternative design would significantly reduce the risk of injury without impairing the product's utility is a question of fact, not a question of law in Arkansas.

*Robinson v. Crown Equip. Corp.*, No. 2:02CV00084WRW, 2006 WL 897669, *5 (E.D. Ark. Mar. 30, 2006).[3] *But see Lawrence v. Raymond Corp.*, No. 3:09 CV 1067, 2011 WL 3418324 (N.D. Ohio Aug. 4, 2011) (precluding Thomas A. Berry from testifying as an expert that a forklift lacking a rear door was defectively designed because, among other reasons, his alternative design testing was found to be insufficient and unreliable).

"While the testing of a prototype is undoubtedly one of the preferred methods for determining the reliability of an expert's opinion, testing is not necessarily a requirement for the admission of expert testimony." *Milliman v. Mitsubishi Caterpillar Forklift Am., Inc.*, 594 F. Supp. 2d 230, 239 (N.D.N.Y. 2009) (citations omitted). Defendant contends that Plaintiffs do not establish the reliability of Berry's expert opinion "that adding a door as standard equipment is

---

[3] Since an alternative design unquestionably exists in this case (a door), and it is ultimately up to the jury to determine whether the proposed alternative is, in fact, a safer alternative, it is of no consequence that, under Arkansas law, a design-defect plaintiff need not establish a safer alternative design, whereas, under New York law, courts follow a risk-utility standard and require a design-defect plaintiff to present a reasonable alternative design.

*safer* than an open compartment," *see* Dkt. No. 44 at 3; but this is precisely the question of fact that a jury must decide.

With regard to the proposed expert testimony of John Coniglio, however — Plaintiffs' so-called "industrial safety" expert — Plaintiffs, and even Coniglio himself, concede that Coniglio is not qualified to render an expert *design* opinion. As such, to the extent that Plaintiffs seek to call Coniglio to render an expert opinion regarding the relative safety of open-versus-closed-compartment stand-up forklift designs, the Court finds that he is not qualified to render such an opinion. Although Coniglio's "extensive experience in the area of industrial safety and the relationship between man and machine in the warehouse and factory setting" might entitle him to testify reliably about the cause of the forklift accident, *see* Dkt. No. 43 at 14, the Court finds that it does not entitle him to render an expert design opinion — the fundamental issue in this case.[4]

The relative safety of a forklift equipped with an operator-compartment door compared to the safety of a forklift without a door is of central importance to this litigation. Whether an alternative design is safer presents a question of fact, not law, for the jury to decide. *See Quiles v. Bradford-White Corp.*, No. 10-CV-747, 2012 WL 1355262, *4 (N.D.N.Y. Apr. 18, 2012) (citation omitted). Since Thomas A. Berry can support Plaintiffs' design defect claim regarding a possible and feasible alternative deign, or, more accurately, assist the jury in coming to its own conclusion on the matter, the Court concludes that it should not bar Plaintiffs from presenting Berry's expert design opinion to the jury.

---

[4] Further, with regard to Coniglio's opinion that the forklift is defective due to its braking system, he stated plainly during his deposition that he was "not really here to pick on the brake pedal itself as a design, and I'm not a design engineer." *See* Dkt. No. 38, Exh. "V" attached thereto, at 49.

B.  **Defendant's motion for summary judgment**

A court shall only grant a party's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In its two-and-a-half page memorandum of law in support of its motion for summary judgment, Defendant seemingly assumed that the Court would grant its motion to exclude the testimony of Plaintiffs' proposed experts; and its summary judgment motion relied upon that assumption. Defendant has utterly failed to show that material facts do not remain in dispute regarding whether the open-compartment forklift design constitutes a safer alternative to the closed-compartment design as a standard feature.

Accordingly, the Court denies Defendant's motion for summary judgment without prejudice to renew.

### IV. CONCLUSION

Having carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's *Daubert* motion to exclude Plaintiffs' proffered expert testimony is **GRANTED** with respect to John Coniglio and **DENIED** with respect to Thomas A. Berry; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **DENIED** without prejudice to renew; and the Court further

**ORDERS** that this case be referred to Magistrate Judge Dancks for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: September 1, 2012
       Syracuse, New York

                                              Frederick J. Scullin, Jr.
                                              Senior United States District Court Judge